

FILED

OCT 18 2002

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RICHARD MARTIN DURAN,

        Petitioner,

    v.

ROY CASTRO, WARDEN, et al.,

        Respondents.

_____/

NO. CIV. S-00-305 LKK/JFM

O R D E R

**FOR PUBLICATION**

Petitioner, a state prisoner, brings an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302, his application was referred to the magistrate judge who recommended that the application be denied.  Petitioner, through counsel, has objected to the magistrate judge's findings and recommendation. I consider petitioner's objections on the pleadings and papers filed herein and without oral argument.[1]  See Local Rule 78-

_____

[1]  The district court reviews de novo the magistrate judge's conclusions of law and those portions of the proposed findings of

1 /7

1  230(h).

2  **I.**

3  **FACTUAL AND PROCEDURAL BACKGROUND**

4  On January 4, 1997, J.C. Penney store security officers
5  detained petitioner, Richard Duran, for attempting to shoplift a
6  belt and a pair of socks worth a total of $26.99.  A long-time
7  heroin addict, Duran was found to have 1.55 grams of heroin and
8  a syringe in his possession.  Duran was charged with simple
9  possession of heroin and petty theft with a prior.

10  Duran pled guilty to possession of 1.55 grams of heroin in
11  exchange for the dismissal of the petty theft charge and a
12  recommendation that he serve no more than twenty-five years to
13  life in prison.  Under the terms of the agreement, Duran
14  admitted that he had suffered two prior serious felonies--two
15  1989 kidnapping convictions stemming from a single incident
16  where, upon being refused a ride by a woman, Duran grabbed her
17  seven-year-old son and told the woman to do as he said or he
18  would hurt the boy.  Keeping its end of the bargain, the State
19  dismissed the petty theft charge with the understanding that the
20  ////

21  ////

22

23  fact to which objection has been made.  See 28 U.S.C.
§ 636(b)(1)(C).  The court may, however, assume the correctness of
24  that portion of the proposed findings of fact to which no objection
has been made.  See United States v. Remsing, 874 F.2d 614, 617
25  (9th Cir. 1989).  The court is not bound to adopt the magistrate
judge's findings and recommendations, but should exercise "sound
26  judicial discretion" in making its own determination on the record.
United States v. Raddatz, 447 U.S. 667, 675-76 (1980).

1 judge could consider it at sentencing.[2]

2      The trial judge sentenced Duran to twenty-five years to
3 life.  In light of Duran's criminal history the judge explained,
4 "I still see your record as just a person who just can't make it
5 outside. . . I truly feel if you were given a shorter sentence,
6 you wouldn't be out two minutes before you reoffended."[3]  See
7 People v. Duran, Third Appellate Dist. No. CO28055 at 6 (filed
8 March 31, 1999).

9      Duran appealed to the California Court of Appeals.  Among
10 other things, he argued that his sentence was cruel and unusual
11 in violation of the Eighth Amendment.  The California Court of
12 Appeals rejected this claim.  See id.  The California Supreme
13 Court denied review and Duran, proceeding pro se, brought an
14 application for a writ of habeas corpus in this court.  Upon
15 receipt of the magistrate judge's findings and recommendation
16 that petitioner's application be dismissed, and after a review
17 of the record, this court appointed counsel for the petitioner.
18 ////
19 ////
20 ////
21

22       [2]  Petitioner, who filed his habeas petition pro se, did not
attack the validity of his plea agreement or raise an ineffective
23 assistance of counsel claim.  Nonetheless, I cannot help but note
that the disposition obtained for petitioner was a plea bargain
24 only in the most oxymoronic sense.

25       [3]  After serving his term for kidnapping, petitioner had been
out of prison for about a year before he was charged with
26 possession of heroin.

3

1                         **II.**

2                      **ANALYSIS**

3       This court was initially prompted to appoint counsel for

4 petitioner after the Ninth Circuit issued two decisions finding

5 the application of California's Three Strikes law

6 unconstitutional, albeit under circumstances different than

7 those at bar.  See Andrade v. Attorney General of the State of

8 California, 270 F.3d 743 (9th Cir. 2001); Brown v. Mayle, 278

9 F.3d 1019 (9th Cir. 2002).  The fact that the Supreme Court has

10 granted certiorari in one of those decisions, see Lockyear v.

11 Andrade, 122 S.Ct. 1434 (2002), would ordinarily warrant a stay

12 of the proceedings in this matter pending a decision by the High

13 Court.  That said, the factual differences between this case and

14 Andrade are significant.  Moreover, review of this case has

15 raised questions not addressed by the Ninth Circuit in Andrade

16 or Brown, supra.  In particular, this case requires

17 consideration of the effect of the California Supreme Court's

18 interpretation of petitioner's sentence as a life sentence

19 without parole.  I also consider here, apart from the rationale

20 in Brown, 278 F.3d at 1036, how the Double Jeopardy Clause

21 circumscribes the relevance of petitioner's recidivism for

22 purposes of proportionality review.  Thus, while the grant of

23 certiorari may suggest a stay, this case is sufficiently

24 distinct from Andrade that a decision there may not be

25 dispositive here.  Accordingly, prompt resolution appears

26 appropriate.

1    For the reasons that follow, the court concludes that

2 petitioner's objections to the magistrate judge's findings and

3 recommendations must be sustained, and that his application for

4 a writ of habeas corpus must be granted.

5 **A.    THE STATE COURT'S DECISION**

6    The petitioner challenged his sentence on Eighth Amendment

7 grounds.   The California Court of Appeals responded with one

8 sentence:

9        In light of defendant's recidivism and extensive
         criminal history, we also reject his contention that
10       the sentence of 25 years to life constitutes cruel and
         unusual punishment in violation of the Eighth
11       Amendment of the federal Constitution and article I,
         section 17 of the California Constitution.   (Cf.
12       People v. Cartwright (1995) 39 Cal.App.4th 1123, 1134-
         37).

13

14 See People v. Duran, Third Appellate Dist. No. CO28055 at 6-7

15 (filed March 31, 1999).[4]

16    Petitioner's application for a writ of habeas corpus

17 depends upon whether the Court of Appeals' summary rejection of

18 his Eighth Amendment challenge was either contrary to Supreme

19 Court precedent or amounted to an unreasonable application of

20 clearly established Supreme Court precedent.   See Van Tran v.

21 Lindsay, 212 F.3d 1143, 1155 (9th Cir. 2000).[5]   I turn now to

22

23    [4]  Because the California Supreme Court denied petitioner's
     review petition without comment, the relevant opinion is that of
     the state court of appeal, as it is the last reasoned decision on
24   petitioner's Eighth Amendment claim.   See Ylst v. Nunnemaker, 501
     U.S. 797, 803-04 (1991).
25
     [5]  Federal habeas corpus relief is reserved for violations of
26   the Constitution and the laws of the United States.   See 28 U.S.C.

1  the Supreme Court's Eighth Amendment jurisprudence and its

2  application in petitioner's case.

3  **B.     EIGHTH AMENDMENT ANALYSIS OF PETITIONER'S SENTENCE UNDER**
          **CLEARLY ESTABLISHED SUPREME COURT PRECEDENT**

4

5      While the Eighth Amendment prohibits excessive punishments,

6  it does not make clear how courts are to determine the boundary

7  beyond which punishments become excessive.  This is especially

8  so where the penalty is a fine, see <u>United States v. Bajakajian</u>,

9  524 U.S. 321, 335-36 (1998), or a term of imprisonment.  <u>See</u>

10 <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991)(Kennedy, J.,

11 concurring)(citing <u>Solem v. Helm</u>, 463 U.S. 277, 289-90

12 (1983)(quoting <u>Rummel v. Estelle</u>, 445 U.S. 263, 272 (1980))).

13 ////

14

15 § 2254(a).  "Under AEDPA, we may reverse a state court's decision
   denying relief only if that decision is "contrary to, or involves
16 an unreasonable application of, clearly established federal law as
   determined by the Supreme Court of the United States.'" <u>Van Tran</u>
17 <u>v. Lindsay</u>, 212 F.3d 1143, 1149 (9th Cir. 2000) (quoting 28 U.S.C.
   § 2254(d)(1)).  The Ninth Circuit has explained these standards as
18 follows:
          A state court's decision can be "contrary to" federal
19        law either 1) if it fails to apply the correct
          controlling authority, or 2) if it applies the
20        controlling authority to a case involving facts
          "materially indistinguishable" from those in a
21        controlling case, but nonetheless reaches a different
          result.  A state court's decision can involve an
22        "unreasonable application" of federal law if it either
          1) correctly identifies the governing rule but then
23        applies it to a new set of facts in a way that is
          objectively unreasonable, or 2) extends or fails to
24        extend a clearly established legal principle to a new
          context in a way that is objectively unreasonable.
25
   <u>Van Tran v. Lindsey</u>, 212 F.3d 1143, 1150 (9th Cir. 2000)(citing
26 <u>Williams v. Taylor</u>, 529 U.S. 362, 405-09 (2000)).

1    Because it is said that courts are not particularly suited
2    to determine the appropriate term of imprisonment for a given
3    crime, see id. at 1000, Eighth Amendment jurisprudence has
4    developed a restrictive set of criteria.[6]  When reviewing a
5    sentence of imprisonment under the Eighth Amendment, courts need
6    not find "strict proportionality."  Rather, the term of
7    imprisonment will fail to pass constitutional muster only in
8    cases of "extreme sentences that are 'grossly disproportionate'
9    to the crime."  Id. (citing Solem v. Helm, 463 U.S. 277, 288
10   (1983)).  The Supreme Court has observed that such instances
11   "have been exceedingly rare."  Rummel v. Estelle, 445 U.S. 263,
12   272 (1980); see also Solem, 463 U.S. at 289-90 (1983); Harmelin,
13   501 U.S. at 1001 (Kennedy, J., concurring).
14   ////

15   _____

16   [6] It is, to say the least, not apparent why legislators, who
     have no experience fixing actual sentences, are more qualified than
     judges, whose business it is to actually sentence.  Indeed,
17   historically, legislatures, recognizing their limitations, provided
     only broad parameters for punishment, leaving to the experienced
18   judiciary the task of fixing the actual sentence.  The recent trend
     towards more restrictive statutes reflects discontent with
19   perceived disparities and is not predicated upon asserted superior
     legislative insight.
20       Moreover, even assuming legislatures were in a better position
     to fix sentences then judges, the law considered here is the result
21   of the initiative process--a process not noted for careful and
     deliberate consideration.  See Carver v. Nixon, 72 F.3d 633, 644
22   (8th Cir. 1995)("The process of enactment, while perhaps not always
     perfect, includes deliberation and an opportunity for compromise
23   and amendment, and usually committee studies and hearings.  These
     are substantial reasons for according deference to legislative
24   enactments that do not exist with respect to proposals adopted by
     initiative.")(citing Yniguez v. Arizonans for Official English, 69
25   F.3d 920, 930-31 (9th Cir. 1995)(en banc)(noting ballot initiative
     lacked legislative findings and was not subjected to extensive
26   hearings or analysis)).

7

1    Having acknowledged the difficulty inherent in line-
2  drawing, however, it is equally certain that relativism cannot
3  serve as a guiding principle.  The courts are not free to
4  abdicate their responsibility to determine the limitations
5  created by the Eighth Amendment in favor of unconstrained
6  legislative power.  Instead, "guided by objective factors,"
7  courts must review penalties for gross disproportionality.  See
8  Harmelin, 501 U.S. at 1001 (Kennedy, J., concurring)(citing
9  Solem, 463 U.S. at 277 (1983)); Bajakajian, 524 U.S. at 336-37
10 (1998)(applying the standard for gross disproportionality set
11 forth in Solem, 463 U.S. at 288, to the question of whether a
12 fine was excessive in violation of the Eighth Amendment); Solem,
13 463 U.S. at 288, 290-91.  The Supreme Court has prescribed the
14 process for such a review as first requiring the reviewing court
15 to determine whether a "threshold comparison of the crime
16 committed and the sentence imposed leads to an inference of
17 gross disproportionality."  Harmelin, 501 U.S. at 1001 (Kennedy,
18 J., concurring).[7]  If so, the court should undertake the
19 intrajurisdictional and interjurisdictional analyses set forth
20 in Solem, see id., that is, compare the challenged sentence with
21 "the sentences imposed on other criminals in the same
22 jurisdiction," and with "the sentences imposed for commission of
23
24        [7] The test set forth in Justice Kennedy's concurrence is the
   "'rule of Harmelin' because it is the 'position taken by those
25 Members who concurred in the judgment[] on the narrowest grounds
   . . . .'"  Andrade v. Attorney General of the State of California,
26 270 F.3d 743, 754 (9th Cir. 2001)(quoting United States v. Bland,
   961 F.2d 123, 128-29 (9th Cir. 1992)).

the same crime in other jurisdictions." Solem, 463 U.S. at 292.
Below, I apply the prescribed process.

### 1.   A Threshold Comparison of Petitioner's Sentence and Offense

#### a.   Harshness of the Penalty

The Ninth Circuit has noted numerous aspects of
California's Three Strikes law which "combine to make it
particularly severe." Andrade, 270 F.3d at 748; see also Brown,
238 F.3d at 1021. Rather than reiterate most of the Circuit's
observations, I simply note that, in large part, they apply with
equal force to the petitioner in this case.[8] What the Circuit
did not address in Andrade or Brown is the consequence for
Eighth Amendment analysis of California's own interpretation of
the sentence given petitioner. As I now explain, that
interpretation has important consequences in resolving the
matter at bar.

Under California law, when a sentence is challenged as
cruel and unusual, it must be examined "under the assumption
that the maximum possible sentence will be served." 22 CAL.
JUR.3D Criminal Law: Post-Trial Proceedings § 164(citing People
v. Morgan, 36 Cal.App.3d 444 (Cal. Ct. App. 1973)); see also In

---

[8]   The only notable difference between the "particularly
severe" application of Three Strikes in Andrade and Brown and its
application in petitioner's case is that petitioner's principal
offense was not a "wobbler" that could be characterized as a
misdemeanor or a felony. Rather, possession of heroin is a felony.
As I discuss, infra, however, that petitioner's offense is a felony
in name does not alter the minor nature of that offense.

1  re Foss, 10 Cal.3d 910, 918-19 (1974) (disapproved on other

2  grounds by People v. White, 16 Cal.3d 791 (1976)).  The state

3  courts' assumption that the maximum sentence will be served is

4  binding on this court as an authoritative construction of the

5  effect of California's sentencing law.  See Mullaney v. Wilbur,

6  421 U.S. 684, 691 (1975)(state supreme court's construction of

7  State's own law is authoritative).  In sum, federal courts must

8  consider petitioner's sentence to be life in prison without

9  parole--the most severe punishment available next to capital

10  punishment.[9]  See Solem, 463 U.S. at 297.

11

12      [9] Such an interpretation of petitioner's sentence is not
merely formalistic.  Indeed, at present the availability of parole
for those with term-to-life sentences is very much in question.

13  See Petitioner's Request to Expand Record, Exh. 1, Legislative
Analyst's Analysis of 2000-02 Budget Bill: Board of Prison Terms,

14  at 2-3 (discussing unwritten policy of not releasing life-term
inmates on parole).

15      Of course, the fact that parole is discretionary would
generally not, in and of itself, be enough to render the

16  possibility of parole irrelevant for the purposes of
proportionality review.  See Rummel, 445 U.S. at 280-81 ("the

17  possibility of parole, however slim, serves to distinguish Rummel
from a person sentenced under a recidivist statute. . . which

18  provides for a sentence of life without parole. . . ").

19      Rather, the United States Supreme Court has made practical
assessments of the availability of parole in reviewing a prison

20  term for proportionality.  See Solem, 463 U.S. 277 at 302
(explaining that the Rummel Court "did not rely simply on the

21  existence of some system of parole.  Instead it looked to the
provisions of the system presented, including the fact that Texas

22  had 'a relatively liberal policy of granting good time credits to
its prisoners . . . ."); id. at 303 (noting, in the course of

23  finding Solem petitioner's life sentence was disproportionate, that
even if petitioner's sentence was commuted to life with the

24  possibility of parole, the parole system to which he was subject
was "far more stringent than the one before us in Rummel.").

25      Here, the State court's interpretation of petitioner's
sentence as that of life without parole coincides with the

26  practical assessment this court would make under Solem, supra.
Like the petitioner in that case, Duran cannot look to a liberal

1                       b.   **Gravity of the Principal Offense**

2          The minor nature of petitioner's offense contrasts starkly

3   with the severity of his punishment.  Taking into account the

4   "harm caused or threatened to the victim or society, and the

5   culpability of the offender," <u>Solem</u>, 463 U.S. at 292, it is

6   clear that, while simple possession of heroin is categorized as

7   a felony in California, it lacks the earmarks of a serious

8   offense.[10]

9          First, simple possession of heroin is a non-violent crime.

10  <u>See Solem</u>, 463 U.S. at 292 ("[N]onviolent crimes are less

11  serious than crimes marked by violence or the threat of

12  violence").  The possession of a small amount of heroin carries

13  no more threat of violence than does addiction to heroin, for

14  which imprisonment is proscribed by the Eighth Amendment.  <u>See</u>

15  <u>Robinson v. California</u>, 370 U.S. 660, 667 (1962).  Indeed, as a

16  matter of common experience, an addict who is not in possession

17  of narcotics likely poses a greater risk to the community than

18  one who possesses the means to satisfy his or her craving.[11]

19         A second, and related consideration is the magnitude of the

20  harm caused or threatened by petitioner's offense.  <u>See</u> <u>Solem</u>,

21  _____

22  parole policy to mitigate the harshness of his life sentence.

23         [10]  In considering the gravity of the offense, the court must
    "focus on the principal felony."  <u>Solem</u>, 463 U.S. at 296 n.21.
24  Prior convictions are, however, "relevant to the sentencing
    decision," <u>id.</u>, and are discussed <u>infra</u>.

25         [11]  Obviously, it does not follow that all controlled
    substances share this characteristic.  A person in possession of
26  PCP, for example, likely poses a fairly serious threat of violence.

1  463 U.S. at 293 ("absolute magnitude of the crime may be
2  relevant.  Stealing a million dollars is viewed as more serious
3  than stealing a hundred dollars").  Petitioner was convicted of
4  possession of 1.55 grams of heroin, which was presumptively and,
5  as apparent by the paraphernalia on his person at the time of
6  his arrest, actually for his personal use.  Unlike the drug
7  offenses previously reviewed by the Supreme Court on
8  proportionality challenges, petitioner's offense did not involve
9  the distribution of controlled substances and all the attendant
10 social problems caused thereby.[12]  See Harmelin, 501 U.S. at
11 1002-1003 (Kennedy, J., concurring); see also Hutto v. Davis, 454
12 U.S. 370, 372 n.1 (1982)(forty years in prison for possession of
13 marijuana with intent to distribute did not constitute cruel and

---

[12]   I cannot agree with respondent that, under Harmelin,
simple possession of heroin may be considered a serious risk to
society.  Respondent cites Justice Kennedy's observation that,
> Quite apart from the pernicious effects on the
> individual who consumes illegal drugs, such drugs relate
> to crime in at least three ways: (1) A drug user may
> commit crime because of drug-induced changes in
> physiological functions, cognitive ability, and mood;
> (2) A drug user may commit crime in order to obtain
> money to buy drugs; and (3) A violent crime may occur as
> part of the drug business or culture.
Id.
     This observation, however, does not support the premise that
petitioner's heroin possession posed a serious threat to society.
Justice Kennedy cited a statistical relationship between crime and
drugs to support his conclusion that a drug dealer, who had 672
grams of cocaine for distribution, could reasonably be thought to
pose a serious threat to society.  See id. at 1003.  While
statistics may tend to show that this amount of cocaine,
distributed throughout a community, would result in "violence,
crime, and social displacement," id., they do not show that a given
individual in possession of just any controlled substance would
resort to violence and crime.  Nor did Justice Kennedy purport to
make that connection.

1  unusual punishment in light of evidence before the jury that
2  defendant was an active drug dealer who had, among other things,
3  sold drugs to be smuggled into prison).

4       Finally, and perhaps most significantly, I note that, in
5  the judgment of the legislators and voters of California, simple
6  possession of heroin is neither a serious nor violent crime. Cf.
7  Harmelin, at 999-1000.  California's Three Strikes law itself
8  does not categorize simple possession of heroin as a serious or
9  violent crime. See Cal. Penal Code §§ 667(d), 667.5(c),
10 1192.7(c) (defining serious or violent crimes that would qualify
11 as first or second strikes).  Nor, outside of the context of
12 Three Strikes, is simple possession penalized harshly.  At the
13 time petitioner was sentenced, the maximum sentence available
14 for simple possession of heroin was three years.  Moreover,
15 courts were given discretion to grant probation or order
16 diversion. See Cal. Penal Code § 1000.  With the passage of
17 Proposition 36 in 2000, this discretion has become a mandate.
18 Absent factors in aggravation, a simple possession conviction
19 merits only probation and drug treatment.  Incarceration may not
20 be imposed.[13]  See Cal. Penal Code § 1210.1.  Of course, in
21 reviewing petitioner's sentence, the California Court of Appeals

22

---

23     [13]  In passing Proposition 36, California voters reiterated
   their judgment that simple possession offenses were not serious.
24 The stated purpose of Proposition 36 was, in pertinent part, to
   "preserv[e] jails and prison cells for serious and violent
25 offenders, and to improve public health by reducing drug abuse and
   drug dependence through proven and effective drug treatment
26 strategies." See 2000 Cal. Legis. Serv. Prop. 36 § 3(c).

1  could not have known that Proposition 36 would come to pass.
2  It is noteworthy only as it epitomizes what was evident both in
3  reality and as a matter of legislative judgment well before its
4  passage, namely, the minor nature of the offense.

5          **c.  Recidivism as an Aggravator**

6          Having determined that petitioner's principal offense was
7  minor, however, does not end the inquiry.  Although the focus
8  should be on the seriousness of the principal offense, it is
9  well-established that recidivism is an appropriate consideration
10 in sentencing.  Prior convictions may call for a "stiffened
11 penalty for the latest crime, which is considered an aggravated
12 offense because a repetitive one."  Witte v. United States, 515
13 U.S. 389, 400 (1995)(quoting Grygor v. Burke, 334 U.S. 728, 732
14 (1948)).

15         The repetitive criminal rationale has long provided a basis
16 upon which to uphold recidivist sentencing schemes against
17 double jeopardy challenges.  See, e.g., Graham v. West Virginia,
18 224 U.S. 616, 624 (1912).  It is not, however, simply a wild
19 card that renders any penalty constitutional, however severe its
20 terms and however minor the principle offense.  Rather, as
21 explained below, given the strictures of the Double Jeopardy
22 Clause, recidivism may be taken into consideration in the
23 sentencing decision only to the extent that it serves to
24 aggravate the principal offense.

25         The limitation imposed by the Double Jeopardy Clause takes
26 two forms.  First, as the Ninth Circuit observed in Brown, prior

                                14

1  convictions cannot aggravate the principal offense if they have
2  no connection with the current offense.  Brown, 238 F.3d at
3  1036.  A stiffened penalty is warranted "only if the defendant's
4  current offense involves a repetition of a particular offense
5  characteristic, indicating that the defendant remains prone to
6  that specific kind of antisocial activity."  Id.; cf. Witte v.
7  United States, 515 U.S. 389, 399 (1995)("evidence of related
8  criminal conduct to enhance a defendant's sentence for a
9  separate crime . . . does not constitute punishment for that
10  conduct within the meaning of the Double Jeopardy Clause."
11  (emphasis added)).

12      The Double Jeopardy Clause also imposes a second form of
13  limitation, not addressed by the Ninth Circuit.  Regardless of
14  the relationship between the principal offense and prior
15  convictions, those priors can only serve to enhance the
16  punishment for the principal offense to the degree that such
17  offense is susceptible to aggravation.  Put differently, some
18  minor offenses will never warrant severe punishment even at
19  their most aggravated.  See, e.g., Rummel, 445 U.S. at 274 n.11
20  (life sentence for hypothetical overtime parking violation would
21  be disproportionate).[14]  Thus, when punishment greatly exceeds

22

23  [14]  This example was once dismissed by Justice Scalia as a
"'parade of horribles' form of argumentation."  See Harmelin, 501
24  U.S. at 986 n.11 (Scalia, J., concurring).  California's Three
Strike, however, has demonstrated that Justice Scalia's imagination
25  failed him in this instance.  There is little to distinguish the
parking violation example from the real-life parade of horribles
26  that has emerged from the statute at bar.  See, e.g., Andrade, 270
F.3d 743 (petitioner sentenced to life in prison for theft of

15

1 that warranted by the aggravated offense, it begins to look very
2 much as if the offender is actually being punished again for his
3 prior offenses.

4    The Supreme Court addressed the potential for this very
5 possibility in reviewing a sentence under California's Three
6 Strikes Law.   In <u>Monge v. California</u>,524 U.S. 721(1998), Justice
7 Scalia observed, "The California Code is full of 'sentencing
8 enhancements' that look exactly like separate crimes, and that
9 expose the defendant to additional maximum punishment."[15]  <u>Id.</u> at
10 739 (Scalia, J. dissenting).  As the Supreme Court had observed
11 earlier in the same term, however, a recidivism enhancement
12 cannot be treated as an element of the offense without running
13 afoul of the Double Jeopardy Clause.   <u>See</u> <u>Almendarez-Torres v.</u>
14 <u>United States</u>, 523 U.S. 224, 247 (1998)(declining to adopt a
15 rule that a recidivism enhancement significantly increasing the
16 sentence would be considered an element of the offense).   Thus,
17 when considering a recidivism enhancement under Three Strikes,

18

19 videotapes worth $153.54); <u>Riggs v. California</u>, 119 S.Ct. 890, 891
(1999)(dissent from denial of <u>certiorari</u>)("motivated by
20 homelessness and hunger," petitioner stole a bottle of vitamins and
was sentenced to life in prison).

21    [15] Remarkably, the California Supreme Court has construed the
recidivism enhancement imposed by Three Strikes in terms very
22 similar to those used by Justice Scalia in <u>Monge</u>, <u>supra</u>.  Unwilling
or unable to maintain the fiction that California's recidivism
23 enhancements correspond to an aggravated principal offense, the
state's high court has explained, "'the purpose of section 667.71
24 is <i>not</i> to punish especially aggravated instances of a particular
crime,' but to 'serve[] the same purpose as the Three Strikes' law,
25 which is to punish recidivism.'" <u>People v. Murphy</u>, 25 Cal.4th 136,
155 (2001)(emphasis in the original) (citing <u>People v. Benson</u>, 18
26 Cal.4th 24, 34 (1998)).

16

1  the Monge Court did not adopt a per se rule that any recidivist
2  enhancement that increased the maximum sentence should be viewed
3  as an element of the offense.  Monge, 524 U.S. at 728-29.
4  Rather, it reviewed the recidivist enhancement at issue to
5  determine whether, as applied, it fell within a
6  "constitutionally permissible" range such that it "did not place
7  petitioner in jeopardy for an 'offense.'"  Id. at 729.

8      Monge provided a clear reminder to courts reviewing
9  sentences imposed under Three Strikes that the Double Jeopardy
10  Clause circumscribes the relevance of recidivism.  Under this
11  limitation, petitioner's recidivism cannot be viewed as bearing
12  such weight that the inference of gross disproportionality is
13  weakened.  First, under the authorities outlined in Brown, 283
14  F.3d at 1035-36, petitioner's prior kidnapping convictions
15  cannot serve to aggravate his possession of 1.55 grams of
16  heroin.  That petitioner was convicted of simple possession of
17  heroin in no way indicates that "the former punishment [for
18  petitioner's kidnapping offenses] ha[d] been inefficacious in
19  doing the work of reform for which it was designed," nor has it
20  " evidenced a depravity, which merits greater punishment. . . ."
21  Moore v. Missouri, 159 U.S. 673, 677 (1895)(quoting Plumbly v.
22  Commonwealth, 43 Mass. (2 Met.) 413 1841 WL 3384 (1841)).
23  Petitioner's possession offense completely lacks characteristics
24  in common with his kidnapping convictions, and cannot be
25  "considered an aggravated offense because a repetitive one."
26  Witte, 515 U.S. at 400.

17

1        Moreover, even if petitioner's current offense were
2   aggravated by his prior convictions, under the analysis in Monge
3   petitioner's prior convictions do not destroy the inference of
4   gross disproportionality.  While the sentence in Monge--double
5   the seven year maximum sentence for using a minor to sell drugs
6   where the offender had previously been convicted of a qualifying
7   felony--was found to be within the constitutionally permissible
8   range, see id. at 729, the inquiry in Monge yields different
9   results in the case at bar.  The life sentence at issue here is
10  the most severe sentence available after capital punishment.
11  See Solem, 463 U.S. at 297.  As noted, petitioner's possession
12  offense is minor, having no potential for widespread social
13  impact, such as that inherent in distribution offenses.  Nor did
14  petitioner's offense threaten to destroy a future generation by
15  involving minors.  Given the minor nature of petitioner's
16  offense, it is apparent that petitioner's recidivism could not
17  account for the extreme length of his sentence without breaching
18  the boundaries imposed by the Double Jeopardy Clause.
19  Petitioner's possession of 1.55 grams of heroin, even to the
20  extent it could be considered aggravated by his criminal
21  history, was still a passive, minor offense.

22        Accordingly, I find that petitioner's prior convictions do
23  not destroy the inference of gross disproportionality created by
24  the life sentence imposed for his offense.

25  ////

26  ////

18

## 2. Intrajurisdictional Comparison

Where defendant's sentence presents an inference of gross disproportionality, "we must assess whether the disputed sentence is excessive when compared to 'sentences imposed on other criminals in the same jurisdiction.'" Andrade, 270 F.3d at 761 (citing Solem, 463 U.S. at 292). In making this analysis, the Ninth Circuit compared the sentence under Three Strikes with the sentence that would be received by a first time offender and also compared the sentence under Three Strikes to sentences for other crimes. See id.

As already noted, at the time petitioner was sentenced, the maximum possible sentence that could be imposed on a first-time offender for simple possession of heroin was three years in prison. Currently, absent aggravating factors, a first-time offender would receive probation and drug treatment.

Sentences of comparable severity to that imposed on petitioner are ordinarily imposed for much more serious crimes. First degree murder may be punishable by a sentence of 25 years to life. See Andrade, 270 F.3d at 761. Second degree murder is punishable by 15 years to life. Id at 762. Voluntary manslaughter is punishable by up to 11 years, while a sentence of no more than 8 years is imposed for rape or for sexual assault on a minor. Id.

The fact that petitioner's sentence may be comparable to other sentences imposed under Three Strikes is of no persuasive value in this analysis. See id. (attempt to justify

19

1 constitutionally suspect application of a statute by pointing to
2 other applications of the same statue less than convincing).

3   **3.   Interjurisdictional Comparison**

4       Finally, where there is an inference of gross
5 disproportionality, the court must conduct an
6 interjurisdictional comparison, that is, compare petitioner's
7 sentence to the sentences imposed for commission of the same
8 crime in other jurisdictions.   See Andrade, 270 F.3d at 756.
9 This is perhaps the most significant stage of proportionality
10 review.   As the Court recently explained in Atkins v. Virginia,
11 122 S.Ct. 2242 (2002):

12       Proportionality review under . . . evolving standards
         [of decency] should be informed by "'objective factors
13       to the maximum possible extent.'"  We have pinpointed
         that the "clearest and most reliable objective
14       evidence of contemporary values is the legislation
         enacted by the country's legislatures."
15

16 Id. at 2247 (citations omitted)(considering the application of
17 the death penalty to the mentally retarded).   Although the
18 petitioner in this case does not bring the same sort of a
19 categorical challenge considered in Atkins, the deference paid
20 to the interjurisdictional comparison in Atkins is no less apt.
21 With this in mind, I consider the petitioner's sentence under
22 California's Three Strikes law as compared with the penalties
23 available in other states for the same offense, as aggravated by
24 petitioner's kidnapping convictions.

25       As in California, simple possession of heroin is uniformly
26 treated as a relatively minor offense.   Eighteen jurisdictions

20

1   (seventeen states and the federal government) allow for a term
2   of no more than two years for the offense, absent enhancements.[16]
3   Sixteen jurisdictions allow for a term of more than two, but not
4   more than five years, absent enhancements.[17]  Of the remaining
5   jurisdictions, only Colorado and Georgia allow for sentences in
6   excess of ten years.[18]  See Colo. Rev. Stat. §§ 18-18-405, 18-1-

7
8       [16]  These jurisdictions are:

9   Alaska Stat. §§ 11.71.040,12.55.125 (1 year); Ark. Code Ann. §§ 5-
    64-401, 5-4-401 (up to one year); Del. Code Ann. tit. 16 § 4754,
    tit. 11 § 4206 (6 months); Ind. Stat. §§ 35-48-4-7, 35-50-2-7 (1
10  1/2 years); Iowa Code Ann. §§ 124.401, 903.1 (up to 1 year); Kan.
    Stat. Ann. §§ 65-4162, 21-4502 (up to 1 year); Mass. Gen. Laws Ann.
11  Ch. 94C § 34 (up to 2 years); N. M. Stat. Ann. §§ 30-31-23, 31-18-
    15 (18 months); N.Y. Penal Law §§ 220.03, 70.15 (up to 1 year);
12  Ohio Rev. Code Ann. §§ 2925.11, 2929.14 (6-12 months); Pa. Cons.
    Stat tit. 35 § 780-113 (up to 1 year); S.C. Code Ann. § 44-53-370
13  (up to 2 years); Tenn. Code Ann. §§ 39-17-418, 40-35-111 (up to 11
    months and 29 days); Utah Code §§ 58-37-8, 76-3-204 (up to 6
14  months); Vt. Stat. tit. 18 § 4233 (up to 1 year); W. Va. Code §
    60A-4-401 (90 days - 6 months); Wis. Stat. Ann. § 961.41(3g)(up to
15  2 years); 21 U.S.C.§ 844(a) (up to 1 year).

16      [17] These jurisdictions are:

17  Ariz. Rev. Stat. Ann. §§ 13-3407, 13-701 (1 1/2 -3 years); Fla.
    Stat. Ann. §§ 893.13, 775.082 (up to 5 years); Haw. Rev. Stat.
18  §§ 712-1243, 706-660 (up to 5 years); Illinois Comp. Stat. ch. 720
    § 570/402, ch. 730 § 5/5-8-1 (1-3 years); Ky. Rev. Stat. Ann.
19  §§ 218A.1415, 532.060 (1-5 years); Me. Rev. Stat. Ann. tit. 17A
    §§ 1107, 1252 (up to 5 years); 2002 Md. Sess. Laws Ch. 26 § 5-601
20  (up to 4 years); Mich. Comp. Laws Ann. § 333.7403 (up to four
    years); Minn. Stat. Ann. § 152.025 (up to 5 years); Mont. Code Ann.
21  §§45-9-102 (up to 5 years); Neb. Rev. Stat. §§ 28-416, 28-105 (up
    to 5 years); Nev. Rev. Stat. §§ 453.336, 193.130 (1-4 years); N.J.
22  Stat. Ann. §§ 2C:35-10, 2C:44-1 (4 years); N.D. Cent. Code
    19.03.1-23, 12.1-32-01 (up to 5 years); R.I. Gen. Laws § 21-28-4.01
23  (up to 3 years); Wash. Rev. Code § 69.50.401 (up to 5 years).

24      [18]  These remaining jurisdictions are:

25  Ala. Code §§ 13A-12-212, 13A-5-6 (1-10 years); Conn. Gen. Stat.
    Ann. §§ 21a-279 (up to 7 years); Idaho Code § 37-2732 (up to 7
26  years); La. Rev. Stat. § 40:966 (4-10 years); Miss. Code Ann. § 41-

21

1    105 (4-12 years); Ga. Code Ann. § 16-13-30 (2-15 years).

2    Unlike California, however, most jurisdictions' recidivist

3 sentencing schemes are in keeping with the notion that

4 possession of heroin is a relatively minor offense. In twenty-

5 one jurisdictions, a simple possession offense is not deemed to

6 be aggravated by recidivism at all. These jurisdictions would

7 categorically except petitioner's offense from recidivist

8 sentencing enhancements.[19]

9    The jurisdictions that do provide for some type of

10 sentencing enhancements for prior convictions generally operate

11 under recidivist statutes that are much more limited than

12

13 29-139 (2-8 years); Mo. Ann. Stat. §§ 195.202, 558.011 (up to 7 years); N.H. Rev. Stat. Ann. §§ 318-B:26, 651:2 (up to 7 years);

14 N.C. Gen. Stat. §§ 90-95, 15A-1340.17(c)and (d) (presumptive range of 4-6 years minimum duration, 5-8 years maximum duration); Okla. Stat. tit. 63 § 2-402 (2-10 years); Ore. Rev. Stat. §§ 475.992,

15 161.605 (up to 10 years); S.D. Codified Laws §§ 22-42-5, 22-6-1 (up to 10 years); Tex. Health & Saf. Code § 481.115, Tex. Penal Code

16 § 12.34 (2-10 years); Va. Code Ann. §§ 18.2-250, 18.2-10 (1-10 years); Wyo. Stat. § 35-7-1031 (up to 7 years).

17

18    [19] In thirteen jurisdictions, possession of heroin is a misdemeanor and, as such, not subject to recidivist sentencing. See Ark. Code Ann. §§ 5-64-401(c), 5-4-501; Del. Code Ann. tit. 16

19 § 4754, tit. 11 § 4214; Iowa Code Ann. §§ 124.401, 902.8; Kan. Stat. Ann. §§ 65-4162, 21-4504; 2002 Md. Sess. Laws ch. 26 §§ 5-

20 601, 14-101(c)(d)and (e); N.Y. Penal Law §§ 220.03, 70.08; Pa. Cons. Stat tit. 35 §780-113, tit.42 § 9714; S.C. Code Ann. §§ 44-

21 53-370, 17-25-45; Tenn. Code Ann. §§ 39-17-418, 40-35-106; Utah Code §§ 58-37-8, 76-3-203.5; Vt. Stat. tit. 18 § 4233, tit 13 § §1,

22 11, 11a; W. Va. Code §§ 60A-4-401, 61-11-18; 21 U.S.C. § 844, 18 U.S.C. § 3559(a)(6).

23    In eight jurisdictions, recidivist sentencing schemes are reserved for enumerated serious or violent felonies and/or minor

24 drug crimes are excepted from the recidivist sentencing scheme. See Conn. Gen. Stat. Ann. § 53a-28; Fla. Stat. Ann. § 775.084;

25 Minn. Stat. Ann. § 609.1095; Ohio Rev. Code Ann. §§ 2929.11, 2929.14; Ore. Rev. Stat. § 161.725; Va. Code Ann. § 19.2-297.1;

26 Wash. Rev. Code §§ 9.94A.120, 9.94A; Wyo. Stat. 6-10-201.

22

1  California's Three Strikes.  For example, where, in California,
2  petitioner's sentence was enhanced by virtue of two convictions
3  arising out of the same kidnapping incident, many states'
4  recidivist laws count only convictions arising out of separate
5  incidents.[20]  Similarly, in New Mexico, a recidivist enhancement
6  will not be imposed unless the offender has suffered at least
7  three prior felony convictions.  See N.M. Stat. Ann. § 31-18-17
8  (requiring at least three prior convictions before an
9  enhancement of 8 additional years may be imposed).  Thus, in
10  one-third of the jurisdictions in which simple possession can be
11  aggravated by prior convictions, petitioner's kidnapping
12  convictions would not serve to aggravate his possession offense.

13      Finally, nearly all of the remaining jurisdictions in which
14  petitioner's kidnapping convictions would trigger enhancements
15  provide for much lower maximum enhanced sentences than the
16  minimum mandated by Three Strikes and/or much earlier parole
17  eligibility.[21]  Among these states, the greatest length of time

18

19  [20]  See Colo. Rev. Stat. § 16-13-101; Haw. Rev. Stat.
    § 706.606.5, State v. Cornelio, 935 P.2d 1021 (Haw. S. Ct. 1997);
20  Ind. Code § 35-50-2-8; Miss. Code Ann. § 99-19-83; Mo. Ann. Stat.
    § 558.016; N.H. Rev. Stat. Ann. 651:6; N.J. Stat. Ann. 2C:44-3,
21  2C:43-7; R.I. Gen. Laws § 12-19-21: 2; Tex. Health & Saf. Code
    § 481.115(b); Tex. Penal Code § 12.42.

22  [21]  The following jurisdictions provide for much lower maximum
    sentences, many of which are further mitigated by the availability
23  of good time credits and parole:

24  Alaska Stat. §§ 12.55.125, 12.55.145(a)(1)(C)(since two priors not
    separate, 2 years); Ariz. Rev. Stat. Ann. § 13-604 (8-12 years);
25  720 Ill. Comp. Stat. § 570/402(c), 730 Ill. Comp. Stat. §§ 5/5-5-
    3.2, 5/5-8-2 (3-6 years); Ky. Rev. Stat. Ann. § 532.080; § 532:060
26  (2 priors out of same incident count as one prior, so enhanced

23

1 that petitioner would have to serve before he would be eligible
2 for release or for parole is ten years.  In only Idaho, Montana,
3 and Nebraska do judges appear to have discretion to impose a
4 sentence for which the offender might serve time comparable to
5 the twenty-five year minimum that is required under Three
6 ////
7 ////

8

9 sentencing range of 5-10 years); Me. Rev. Stat. Ann. tit.17-A
§§ 1252, 1253 (enhanced sentence of up to 10 years, reduced by good
10 time credit of ten days per thirty days); Mass. Gen. Laws. Ann. ch.
94C § 34 (enhanced to statutory maximum of 1 year); Mich. Comp.
11 Laws. Ann. § 769.11; People v. Wright, 437 N.W.2d 603 (Mich. Ct.
App. 1989) (enhanced to double the statutory maximum of 4 years;
12 minimum term cannot be more than 2/3 the maximum); N.C. Gen. Stat.
§ 14-7.1, 15A-1340.14 (since 2 priors not separate, not recidivist
13 enhancement; rather, in light of priors, sentencing range of 8-10
months); N.D. Cent. Code §§ 12.1-32-09, 12-54.1-01 (up to 10 years
14 reduced by good time credit of five days per month); Wis. Stat.
Ann. 939.62, 304.06 (maximum 2 year sentence may be enhanced to up
15 to 6 years, with parole eligibility after 25% of the sentence
served).
16      Even in the minority of jurisdictions where the enhanced
sentencing range gives the courts discretion to apply severe
17 penalties, nearly all mandate an early parole-eligibility date:

18 Ala. Code §§ 13A-5-6, 13A-5-9;15-22-28, 15-22-27 (enhanced
sentencing range of 10-99 years; parole eligible after 1/3 of
19 sentence or 10 years, whichever less); Ga. Code Ann. § 17-10-7
(with prior, judge must give maximum sentence of 15 years, but has
20 discretion to probate or suspend the maximum; presumptive parole
after 1/3 sentence);  La. Rev. Stat. §§ 15:529.1, 574.4,  State v.
21 Francis, 709 So.2d 834 (La. Ct. App. 1998) (2 priors subject to the
same prosecution count as one; enhanced sentencing range between
22 5-20 years; parole eligible after ½ sentence); Nev. Rev. Stat.
§ 207.010.2; § 213.120 (with two priors, enhanced sentencing range
23 of 5-20 years; parole eligible after 1/3 sentence); 2002 Okla.
Sess. Laws ch. 455 section1(A)(2), (C)(2) (amending 21 Okla. Stat.
24 tit. 21 § 51.1); Okla. Stat. tit. 57, 332.7 (since priors not
separate, enhanced sentencing range of twice the minimum, i.e. 8
25 years, to life; parole eligible after the lesser of 1/3 sentence
or ten years); S.D. Codified Laws §§ 22-7-7, 22-6-1; 24-5-1 (priors
26 allow enhancement up to 15 years; parole eligible after ½ the
sentence, reduced by "good time").

24

1 Strikes.[22]  In contrast with the enhancement imposed under Three
2 Strikes, however, the prescribed minimum in these three
3 jurisdictions is quite low.  See note 22, supra.

4     In sum, in thirty one jurisdictions, petitioner's
5 kidnapping convictions would not have triggered enhanced
6 sentencing for his possession conviction at all.  Moreover, even
7 taking into account the twenty jurisdictions where petitioner's
8 sentence would have been enhanced, no jurisdiction outside of
9 California would mandate a sentence of greater than 15 years for
10 petitioner.  In the one jurisdiction that would mandate a 15
11 year sentence, the judge has discretion to suspend the maximum,
12 and parole is available after five years.  See Ga Code Ann.
13 § 17-10-7.  More importantly, with the exceptions of Idaho,
14 Montana and Nebraska, in no jurisdiction outside of California
15 does a court have discretion, much less a mandate, to require
16 petitioner to serve more than ten years before he is eligible
17 for release or for parole.

18     The inference that petitioner's life sentence is grossly
19 disproportionate is fully supported.

20 ////

21

22 ──────────────
    [22]   See Idaho Code §§ 19-2514, 19-2513 (with two priors,
    enhanced sentencing range of 7 years to life; minimum sentence must
    be specified, after which petitioner is parole eligible); Mont.
23  Code Ann. §§ 46-18-501 ; 46-18-502; 46-23-201 (conviction within
    5 years of punishment for a prior results in enhanced sentencing
24  range of 5-100 years; discretion to suspend sentence in excess of
    5 years; parole eligibility after 1/4 sentence); Neb. Rev. Stat.
25  § 29-2221; §§ 83-170, 83-1, 110 (with two priors, enhanced
    sentencing range of 10-60 years; parole eligible after 1/2 minimum
26  sentence minus "good time").

                              25

1 **C.   REASONABLENESS IN LIGHT OF CLEARLY ESTABLISHED SUPREME**
2      **COURT LAW**

3      Having found that the petitioner's sentence is grossly
4 disproportionate to his offense, I also find that the state
5 court's decision was contrary to or an unreasonable application
6 of clearly established Supreme Court precedent.

7      The general analytic framework for reviewing a sentence for
8 proportionality was clearly established at the time that
9 petitioner's sentence was finally reviewed by the California
10 courts in 1999.  See Andrade v. Attorney General of the State of
11 California, 270 F.3d 743, 766 (9th Cir. 2001)("[T]he law
12 governing the application of the Eighth Amendment to non-violent
13 offenders sentenced to life imprisonment was clearly established
14 by the time of the Court of Appeal's 1997 decision in this
15 case").  Even assuming, arguendo, that the fractured decision in
16 Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) provided enough
17 ambiguity in the law that states could simply claim ignorance
18 and run roughshod over the Eighth Amendment, by the time that
19 the California Court of Appeals reviewed petitioner's sentence
20 the Supreme Court had reiterated the point made by Justice
21 Kennedy in Harmelin: Solem's gross disprotionality standard
22 governed.  See Bajakajian, 524 U.S. at 336-37 (1998); see also
23 id. (opinion of Kennedy, J., for the dissenters, agreeing that
24 the majority had applied the appropriate standard).  Indeed, in
25 citing to People v. Cartwright, 39 Cal.App.4th 1123 (1996), a
26 case analyzing a sentence for gross disproportionality, it

26

1  appears that the California Court of Appeals recognized as much.

2      Also clearly established at the time petitioner's sentence
3  was reviewed was the rule that, due to the prohibition on double
4  jeopardy, recidivism may only be constitutionally considered in
5  sentencing to the extent that it aggravates the current offense.
6  This rule has been established for more than a century, see,
7  e.g., Moore v. Missouri, 159 U.S. 673, 677 (1895), and has been
8  reiterated in the Supreme Court's contemporary jurisprudence
9  concerning gross disproportionality challenges.  See Solem v.
10 Helm, 463 U.S. 277, 296 n.21 (1983).  If that were not enough,
11 the Supreme Court applied this rule to determine whether a
12 sentence imposed under the very same recidivist statute
13 operating in this case constituted double jeopardy.  See Monge
14 v. California, 524 U.S. 721, 729 (1998).

15     Given its terse treatment of petitioner's Eighth Amendment
16 challenge, it is impossible to say whether the Court of Appeals
17 recognized and endeavored to apply the constitutional limitation
18 on the relevance of recidivism established by these cases.
19 Whatever the rationale of the Court of Appeals, its decision was
20 either an outright failure to apply the applicable precedent or
21 an unreasonable application thereof.  The sentencing court's
22 decision to impose life imprisonment focused wholly on
23 petitioner's recidivism.  Not only did it fail to "focus on the
24 principal offense," Solem 463 U.S. at 296 n.21, it gave
25 petitioner's principal offense no consideration whatsoever.
26 ////

1  Thus, it clearly failed to observe the principle that, in
2  keeping with the strictures of the Double Jeopardy Clause,
3  recidivism is only relevant to enhance a sentence to the extent
4  that it aggravates the principal offense.  Had the Court of
5  Appeals applied this rule on review, it could not have ignored
6  the inference of gross disproportionality created by imposing a
7  life sentence for simple possession of heroin--an inference
8  confirmed by the intrajurisdictional and interjurisdictional
9  comparisons it should have made.

10                              **III.**

11                           **CONCLUSION**

12      Petitioner's application for a writ of habeas corpus is
13  GRANTED.  Within thirty (30) days, the State shall RESENTENCE
14  petitioner in a manner consistent with the Eight Amendment, as
15  explained in this opinion.

16      IT IS SO ORDERED.

17      DATED:  October 18, 2002.

18                          LAWRENCE K. KARLTON
19                          SENIOR JUDGE
                            UNITED STATES DISTRICT COURT
20

21

22

23

24

25

26

                              28

United States District Court
for the
Eastern District of California
October 18, 2002


* * CERTIFICATE OF SERVICE * *


2:00-cv-00305


Duran

    v.

Castro

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  October 18, 2002, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


        Richard Martin Duran        SJ/LKK (2)
        C-50430
        HDSP                        CF/JFM
        High Desert State Prison
        P O Box 3030
        Susanville, CA  96130

        Rachelle Diane Barbour
        Federal Defender
        801 K Street
        Suite 1024
        Sacramento, CA  95814

        Clifford E Zall
        Attorney General's Office for the State of California
        PO Box 944255
        1300 I Street
        Suite 125
        Sacramento, CA  94244-2550


                        Jack L. Wagner, Clerk


                        by: Deputy Clerk